J. C. ALDERSON, *et al.*

*v.*

CITY OF HUNTINGTON, *et al.*

(No. CC 745)

Submitted February 1, 1949. Decided

March 1, 1949.

422

*Campbell & McNeer* and *Charles F. Bagley, Jr.,* for plaintiffs.

*T. W. Peyton,* for defendants.

Riley, Judge:

The plaintiffs, citizens and residents of the City of Huntington, West Virginia, who are engaged in the real

estate business in that city and are duly licensed by The West Virginia Real Estate Commission, as provided by Chapter 127, Acts of the West Virginia Legislature, Regular Session, 1937, brought this suit in equity in the Circuit Court of Cabell County against The City of Huntington, a municipal corporation, Douglas C. Tompkies, its mayor, and Robert L. Smith, its clerk, for the purpose of obtaining an injunction to prohibit the city from enforcing an ordinance passed by the council thereof on April 13, 1942, which as its title states, undertakes to regulate the real estate business in the City of Huntington and to require all persons therein engaged in the real estate business to pay a license fee for the privilege. The trial court overruled defendants' demurrer to plaintiffs' bill of complaint, and, upon its own motion, certified its rulings here.

The sole issue upon this certificate is whether the City of Huntington is authorized under its charter and the statutory law of this State to require such license and exact such fee.

Prior to the enactment of Chapter 127, Acts of the Legislature, 1937, the general statutory law in West Virginia contained no regulatory provisions pertaining to the licensing of real estate agents or brokers, and in the aforesaid enactment for the first time there was created in this State a real estate commission, known as The West Virginia Real Estate Commission. However, in Code, 1931, 11-12-40, there was a provision for a license "co-extensive with the State" to act as real estate agent or broker in the amount of fifty dollars. This statute simply defined the term "real estate agent", and contained no other provision regulatory or otherwise. So at the time Chapter 127, Acts, 1937, was enacted the only general statutory law dealing with the licensing of the real estate business was clearly in its nature only for revenue purposes. As evidencing a clear legislative intent to take the State out of the field of licensing of

the real estate business on a state-wide basis for revenue purposes only, the Legislature enacted Chapter 119, Acts, 1939, Regular Session, which expressly repealed Code, 1931, Article 12, Chapter 11, and, among other things, imposed license taxes on thirty-two various and sundry specified businesses, activities, trades, and employments, which did not include the real estate business. So at the time of the adoption of the ordinance of April 13, 1942, the only general statute dealing with the licensing of the real estate business was regulatory.

That the 1937 Act was purely regulatory in its nature and not for revenue purposes, clearly appears both from its title and from the body thereof. The title reads: "AN ACT *to regulate* the business of buying, leasing, selling, and managing real estate for others; requiring a license and the payment of a fee to engage in such business; providing penalties for violation of such regulations; and creating the West Virginia real estate commission." (Italics supplied.) This Act created The West Virginia Real Estate Commission, designated its membership and the organization thereof, and authorized expenditures. It provided, among other things, that "It shall be unlawful for any person to act as a real estate broker or as a real estate salesman or to engage in the real estate business without a license issued by" such commission; and that no license should be issued to a real estate broker unless every employee who acts for such broker as a salesman shall secure a license as a real estate salesman. It empowered the commission to grant a license to any applicant, or to refuse to renew any license, or to cancel or withdraw any license issued by it, for the violation of any other provisions of the Act "or for any reasonable cause appearing to the commission." The Act further provided for the original and annual renewal fee for each real estate broker of fifty dollars, if the licensee's place of business is located in a city having a population of seven thousand five hundred or more, and ten dollars, if the licensee's place of business

is located in a town having a population of less than seven thousand five hundred; and a salesman's license fee of twenty-five dollars is required, if the licensee's place of business is located in a city having a population of seven thousand five hundred or more; and five dollars, if the place of business is in a town having a population of less than seven thousand five hundred. Section 10 of the Act provides that the commission may, on its own motion, and shall, upon the verified complaint, in writing of any person, investigate actions of any real estate broker or salesman, or any person assuming to act in either capacity, and shall have the power to suspend or revoke any license issued by the commission, which has been fraudulently procured, or when the licensee, in the course of his licensed business, has breached the code of ethics specified in detail in said section; and Section 12 provides that "All acts or parts of acts, including licensing acts, inconsistent with this act are hereby repealed. But nothing herein contained shall affect any right that municipalities *may now or hereafter* have *to tax, license,* or *regulate* persons engaged in the real estate business." (Italics supplied.)

In *State v. Jackson,* 120 W.Va. 521, pt. 4 syl., 199 S.E. 876, this Court held: "Code, 1931, 11-12-1(h) and 40, to the extent that it requires a license fee of persons engaged in the real estate business is repealed by Chapter 127, Acts West Virginia Legislature, 1937." In that case this Court said that the statute "provides for regulation of the real estate business", and, "Evidently the Legislature intended for this Act to cover the whole range and subject of licensing and regulating the real estate business." So the enactment of the 1937 Act, repealing as it did Code, 1931, 11-12-1(h) and 40, to the extent that it requires a license fee for every person engaged in the real estate business, left the statutory law of this State without any general licensing statute applicable to the real estate business which was for revenue purposes.

Counsel for defendants take the position, and rightly so, that municipal corporations are the creatures of the State and depend on legislative grant for every power they attempt to exercise, whether it be the police power or taxing power. In the recent case of *Brackman's, Incorporated v. The City of Huntington*, 126 W.Va. 21, 24, 27 S.E. 2d 71, the rule is stated: "At this point it is well to state the fundamental principle that municipalities have no inherent power to exercise any function of government whatsoever. Their power rests upon grants of power made by the Legislature, and the Legislature may at its pleasure modify or withdraw the power so granted. It may, if it chooses, repeal any charter, or any law under which municipalities may be created, and destroy any municipal corporation at its will and pleasure." And in *The Anderson-Newcomb Co. v. The City of Huntington*, syl., 117 W.Va. 716, 188 S.E. 118, it was held: "The taxing power of a municipality depends upon legislative authority, expressed or necessarily implied."

Counsel for plaintiffs contend that the ordinance of April 13, 1942, is a clear departure from the policy of the City of Huntington in the matter of licensing the real estate business, and, by the adoption thereof the city for the first time undertook to, and did, regulate such business.

We agree with counsel for plaintiffs that the ordinance of April 13, 1942, is regulatory. Section 3 thereof provides for the issuance, refusal and cancellation of licenses, and that licenses may be issued "to applicants who are found to be of good character and to be competent to carry on the business for which the license is sought". The section further provides that the council may investigate the actions of any real estate brokers or salesman, and shall have the power to suspend or revoke any license, when the licensee has been found to have done or to be doing any specified things set forth

in subsections (a) through (j) thereof. These specified acts, prohibited in the ordinance, are identical with those stated in Acts, West Virginia Legislature, 1937. So, in the matter of licensing of the real estate business, the City of Huntington by the adoption of the ordinance of April 13, 1942, did not do, or attempt to do, more than the Legislature did in the enactment of the statute of 1937. Nevertheless, counsel for plaintiffs say: (1) That Code, 1931, 11-12-41(h) and 40, having been repealed by Chapter 127, Acts, 1937, there is no general statutory enactment providing for the licensing of the real estate business for revenue purposes only, and, therefore, if the instant ordinance is to be construed as a revenue measure, it cannot be upheld, under Code, 8-4-13, which provides that "Whenever anything, for which a state license is required, is to be done 'within such town the council may, unless prohibited by law, require a municipal license therefor, and may impose a tax thereon for the use of the town", because the State was not requiring a license under the general statute for revenue purposes only; and (2) that the ordinance in question, being regulatory, and the State by Chapter 127, Acts, 1937, having already entered into the field of regulating the real estate business by requiring licenses, the City of Huntington also cannot enter into that field for, if it could, it and other municipalities would have the power by the refusal or revocation of licenses on real estate brokers and salesmen to undo what the State is already doing, namely, issuing, through The West Virginia Real Estate Commission, licenses subject to the regulatory and inhibitory provisions of the 1937 statute. Brackman's, Incorporated v. The City of Huntington, supra, is cited for this proposition.

We think, however, that this case is controlled by the Charter of the City of Huntington, Chapter 161, Acts West Virginia Legislature, Second Extraordinary Session, 1933, and the purported "saving clause" contained in Section 12, Chapter 127, Acts of 1937. The pertinent

provisions of the charter are contained in Sections 6 and 33 of Chapter 161, Acts, Second Extraordinary Session, 1933. Section 6 reads, in part, as follows: "Said city shall have, and is hereby granted, power to * * * license, tax, regulate or prohibit theaters * * * and other things or business on which the state does or may exact a license tax; * * * to levy taxes on persons, property and licenses; * * * to have the sole and exclusive right to grant, refuse or revoke any and all licenses for the carrying on of any business within said city on which the state exacts a license tax." Section 33 of said charter provides, in part, as follows: "Concerning anything for which a state license is required to be done within the state or county, but not limited thereto, the council may require a city license therefor, and may impose a tax thereon for the use of the city * * *." So, at the time of the enactment of Chapter 127, Acts, 1937, the City of Huntington had the power, as indicated by the use of the word "regulate", to regulate the real estate business of the city, and, as shown by the use of the word "tax" in Section 6 of the charter, it had likewise the express and specific power to license for revenue purposes also. This Court, having under appraisal the Huntington charter (Chapter 161, Acts, Second Extraordinary Session, 1933), in the case of *Mullens v. City of Huntington,* 117 W.Va. 740, 188 S.E. 120, quoted from said Section 6, emphasizing by italics the words "license, tax", and held that the city could impose a tax on the "privilege of engaging in the business of selling at retail, the same being levied on the gross sales of the business." This Court later in *Shulick-Taylor Co. v. City of Wheeling,* 130 W.Va. 224, pt. 1, syl., 43 S.E. 2d 54, disapproved the application of the term "privilege tax" to a tax on gross sales. The *Mullens* case, notwithstanding such disapproval in the *Shulick-Taylor* case, stands for the proposition that under its charter the City of Huntington had then (as it had at the time of the enactment of Chapter 127, Acts, 1937), the power to tax privileges as provided by Article X, Section 1 of the West Virginia Constitution, which reads:

"* * * The Legislature shall have authority to tax privileges, * * *." As we think the conduct of the real estate business is the exercise of a privilege, and as Section 6 of the Huntington charter specifically empowers the city to regulate the real estate business, we are of opinion that at the time of the enactment of Chapter 127, Acts, 1937, it had the right to license the real estate business, for purposes both of regulation and of revenue.

What then is the effect of Section 12 of said Chapter 127, which, in the repealer clause, provides: "But nothing herein contained shall affect any right that municipalities *may now or· hereafter* have to *tax,* license, or *regulate persons engaged in the real estate business*"? (Italics supplied). Expressly and in clear language, in our opinion, the city had the power, at the time Chapter 127 was enacted, to license the real estate business for revenue purposes, and regulate such business. It follows that unless the ordinance of April 13, 1942, is violative of the holding of this Court in *Brackman's, Incorporated v. City of Huntington, supra,* the ordinance is valid and fully within the legislative delegation of power to the city. As heretofore indicated, the ordinance in question is regulatory, and, in its regulatory provisions, it is in conformity with Chapter 127, Acts, 1937. Point 3 syllabus in the *Brackman's, Incorporated,* case simply held that the powers delegated by the Legislature to the state tax commissioner for the sale of nonintoxicating beer under chapter 12, Acts of 1937, are exclusive, "and the right to exercise the privileges conferred upon a licensee, under a license granted by the Tax Commissioner to carry on the business covered thereby in a municipality, may not be denied to such licensee by a refusal of the municipality to grant a license for the same business." If the language in point 3, syllabus, and the opinion in that case should leave any doubt on this matter of construction, which we think they do not, we say now that the fact that the State has entered into the field of regulating by license the real estate business, does not pre-

clude the City of Huntington from licensing in such field, where the ordinance providing for such license conformed with, and is not in conflict with, the State law. This case does not involve the question of the refusal of the City of Huntington to grant a license to an applicant who has a license from The West Virginia Real Estate Commission, nor is it a case involving the revocation or suspension of a license to such person by the city: it is simply a case testing the power of the City of Huntington, under the provisions of the instant ordinance, conforming, as it does, to the State law, to tax for revenue and to regulate the real estate business within its corporate limits. We think the city has such power under its charter and the repealer clause contained in Chapter 127 of the Acts of 1937.

It follows that the trial court erred in overruling the demurrer to plaintiffs' bill of complaint, and, therefore, his ruling thereon should be reversed.

*Ruling reversed.*