John P. HIGGINS

v.

**MAINE CENTRAL RAILROAD CO., et al.**

Supreme Judicial Court of Maine.

Argued Sept. 15, 1983.
Decided Feb. 9, 1984.

Holder, Grover & Wilkinson, John Holder (orally), Portland, for plaintiff.

Stephen H. Shook (orally), Portland, for Portland Terminal Co.

Before NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ., and DUFRESNE, A.R.J.

NICHOLS, Justice.

On this appeal we must resolve the question of under what conditions a Maine employer may lawfully discriminate against an employee who suffers from epilepsy.

The Plaintiff, John P. Higgins, seeks review of a decision by the Superior Court granting judgment for the Defendants, Maine Central Railroad Company and Portland Terminal Company, in an employment discrimination action brought under the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq.*

Because we conclude that the Defendants failed to comply with that Act, as recently interpreted in *Maine Human Rights Commission v. Canadian Pacific Ltd.,* 458 A.2d 1225 (Me.1983), we sustain the appeal. We dismiss the Defendants' cross-appeal which urges, in essence, a more lenient standard for them.

The Plaintiff worked for the Defendants as an enginehouse laborer and turntable operator at Portland Terminal Company's South Portland facility known as Rigby Yard, beginning in 1969. In October, 1979, the Plaintiff suffered a back injury which caused him to be absent from work for several months. This absence led the Defendant's chief medical officer, Joseph Earnhardt, M.D., to make inquiries concerning the Plaintiff's health to the Plaintiff's personal physicians, John Boothby, M.D. and Norman W. Saunders, M.D. In the process, Dr. Earnhardt discovered that the Plaintiff was an epileptic and had a history of seizures. Dr. Earnhardt notified the Defendants that the Plaintiff "has a long history of convulsive seizures" brought about by epilepsy and recommended that the Plaintiff be placed under work restrictions, including prohibitions from working around moving machinery, trains, turntables, or stationary engines with exposed shafts or gears, and from working alone. As a result, and only a few days later, the Defendants discharged the Plaintiff from service on March 3, 1980.

The Plaintiff filed a complaint with the Maine Human Rights Commission. The parties have stipulated that the Commission found reasonable grounds for believing that unlawful discrimination occurred but failed within 90 days to enter a conciliation agreement between the parties. The Plaintiff then filed a timely civil action in Superior Court, claiming unlawful discrimination under section 4572 of the Maine Human

Rights Act,[1] and requesting the court, in the exercise of its statutorily conferred equity power, to order the Defendants to cease unlawful discrimination, to reinstate him into his former position with full seniority rights, and to grant him lost wages, together with punitive damages, attorney's fees, and such other relief as is deemed just.

The Superior Court, by order dated March 3, 1983, entered judgment for the Defendants following a bench trial, on the basis of the affirmative defense that the Plaintiff could not perform the duties his job entailed without endangering the health or safety of himself or others. 5 M.R.S.A. § 4573(4).[2] On appeal, the Plaintiff attacks the legal standard employed by the trial court in considering this defense and challenges several of its findings of fact as well. We agree that the trial court failed to apply the proper legal standard.

The Maine Human Rights Act (MHRA), 5 M.R.S.A. §§ 4551–4632, prohibits any employer from discharging an employee because of a physical handicap. 5 M.R.S.A. § 4572(1). "Once discrimination has been established, . . . the defendant employer, to avoid liability under the MHRA, must then demonstrate that its discriminatory practices were permitted under statutorily defined exceptions to the MHRA's general prohibitions against discrimination and were thus not unlawful." *Canadian Pacific Ltd., supra*, 458 A.2d at 1230.

■ One such exception, known as the safety defense, permits employment discrimination in individual cases when an employee, because of some handicap, is "unable to perform his duties or perform those duties in a manner which would not endanger the health or safety of the employee or the health or safety of others . . . ." 5 M.R. S.A. § 4573(4). Nine months ago we ruled that this provision requires that an employer seeking to assert the safety defense must establish "that it had a factual basis to believe that, to a reasonable probability, the employee's physical handicap renders him unable to perform his duties or to perform such duties in a manner which will not endanger his own health or safety or the health or safety of others." *Canadian Pacific Ltd., supra*, 458 A.2d at 1234. The safety defense, unlike other defenses, requires an individualized assessment of the health or safety risk in the employment, or continued employment, of a handicapped individual.

■ The Superior Court below, acting without the benefit of the guidance to be provided it a few weeks later by our opinion in *Canadian Pacific Ltd.*, rested its decision on two alternative legal standards, neither of which, unfortunately, approximates the standard we were shortly to enunciate. One approach used by the trial court was to

---

1. Section 4572 provides in pertinent part:

1. *Unlawful employment.* It shall be unlawful employment discrimination, in violation of this Act, except where based on a bona fide occupational qualification:
   A. For any employer to fail or refuse to hire or otherwise discriminate against any applicant for employment because of race or color, sex, physical or mental handicap, religion, ancestry or national origin or age, or because of any such reason to discharge an employee or discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment, or in recruiting of individuals for employment or in hiring them, to utilize any employment agency which such employer knows, or has reasonable cause to know, discriminates against individuals because of their race or color, sex, physical or mental

handicap, religion, age, ancestry or national origin . . . .

5 M.R.S.A. § 4572(1)(A).

2. Section 4573(4) reads:

*Refuse to hire or discharge physically or mentally handicapped.* Nothing in this Act shall prohibit an employer from refusing to hire or discharging a physically or mentally handicapped employee, or subject an employer to any legal liability resulting from the refusing to employ or the discharge of a physically or mentally handicapped employee, where the employee, because of the physical or mental handicap, is unable to perform his duties or perform those duties in a manner which would not endanger the health or safety of the employee or the health or safety of others or to be at, remain or go to or from the place where the duties of employment are to be performed.

apply the three-step test for determining whether a prima facie case of discrimination exists. *Maine Human Rights Commission v. City of Auburn,* 408 A.2d 1253, 1261–68 (Me.1979).[3] This test consists of an analysis of whether the plaintiff is a member of a protected class, whether the defendant had a nondiscriminatory reason for discharging him and whether the reason was bona fide. However, as *Canadian Pacific Ltd.* made very clear, this framework of analysis is applicable only to the question of whether a plaintiff has met his initial burden of showing discrimination, not to an affirmative defense. 458 A.2d at 1230. In the instant case the Defendants concede that they discriminated against the Plaintiff on account of his handicap. The issue is whether they were legally justified in so doing.

The second approach utilized by the presiding justice was to determine the existence of a rational relationship between the Plaintiff's physical condition and the health or safety risk in his continued employment. The justice discerned "evidence, to the point of clear and convincing quantum, that there was a *rational basis*" (emphasis supplied) for the work restrictions placed on the Plaintiff and found that the likelihood of the Plaintiff suffering a seizure on the job was "not merely illusory." We expressly rejected the "rational relationship" test as unduly deferential in *Canadian Pacific Ltd.,* 458 A.2d at 1231.

Not only did the Superior Court fail to inquire whether there was a *reasonable probability* that the Plaintiff's epilepsy would prevent him from performing his duties in a manner which would not endanger the health or safety of himself or others but it also failed to determine whether at the time of dismissal the Defendants had any factual basis for believing that such reasonable probability existed. It would not be an unwarranted finding from the evidentiary record that the Defendants dis-

charged the Plaintiff solely upon the discovery that he was an epileptic with a history of occasionally severe seizures and that no attempt was made at the time to evaluate the likelihood that he would experience a seizure while engaged in a dangerous activity on the job. There is no evidence, in fact, to suggest that the Defendants based their decision to disqualify the Plaintiff from service on anything other than Dr. Earnhardt's warning that the Plaintiff had "a long history of convulsive seizures." The trial court found that the Plaintiff's disqualification occurred only after concurrence by all three doctors then involved (including the Plaintiff's two personal physicians) that work restrictions were appropriate, but this finding is clearly erroneous. At most, the evidence indicates that at different times *after* the disqualification, each of the physicians then treating the Plaintiff suggested work restrictions, although each soon changed his mind. We must, therefore, set aside the Superior Court's finding, since the record does not support it. *Gagne v. Cianbro Corp.,* 431 A.2d 1313 (1981).

We conclude as a matter of law that the mere discovery that the Plaintiff had a history of epileptic seizures did not constitute a sufficient individualized assessment of the health or safety risk posed by his continued employment. What if the seizures were always nocturnal? What if the seizures were preceded by warning signals (technically called "auras"), and if so, how reliable were these? Did the Plaintiff ever experience a seizure on the job? Did any injuries result? All these questions were addressed at the trial, but the crux of the matter is that only after the Plaintiff had been dismissed did the Defendants investigate them. The Defendants discharged the Plaintiff without consulting his physicians or a specialist as to whether he could perform his job safely. In sum, the Defendants engaged in the sort of invidious stereo-

---

**3.** *See also* Comment, *The Prima Facie Case Approach to Employment Discrimination,* 33

Me.L.Rev. 195 (1981).

typing which the Act prohibits. *See Canadian Pacific Ltd., supra,* 458 A.2d at 1230.

■ In their cross-appeal the Defendants argue that they deserve a broader license to discriminate than *Canadian Pacific Ltd.* provides, because, as common carriers by rail, they may be subjected to virtually unlimited liability for personal injuries resulting from negligence. *See* Federal Employers' Liability Act, ch. 2, 45 U.S.C.A. § 51; *et seq.; Emmons v. Southern Pacific Transportation Co.,* 701 F.2d 112 (5th Cir., 1983). We believe that the "reasonable probability" test of *Canadian Pacific Ltd.* adequately protects rail carriers from excessive personal injury liability. Merely because federal law and the hazards inherent in railroad operations subject the Defendants to a comparatively high risk of liability, the Defendants are not entitled to employ only the healthiest and least accident-prone segments of society. The *Canadian Pacific Ltd.* standard reflects our judgment of what the Act requires if it is to have any substance.[4] There is no indication that in enacting the Maine Human Rights Act the Legislature intended to make an exception for rail carriers.

The Defendants cite *Usury v. Tamiami Trail Tours, Inc.,* 531 F.2d 224 (5th Cir. 1976), which stated that the job qualifications of a common carrier employer may be more stringent depending on the likelihood and probable severity of harm in the event of an accident. This is completely consistent with the "reasonable probability" standard: the more hazardous the job, the more probable it is that a handicapped person's employment in that job may endanger the health or safety of himself or others. There is no need, however, to fashion a special standard for the Defendants.

Because the evidence could not have supported the safety defense even if the correct analysis had been employed, the Plaintiff is entitled to judgment. Therefore we must vacate the judgment of the Superior Court and remand the case for further proceedings on the Plaintiff's remedies.

On remand, the Superior Court should decide whether there is a factual basis to believe to a reasonable probability that the Plaintiff's condition *currently* would make his employment as a turntable operator a danger to health and safety. If so, he need not be reinstated. He may, nevertheless, still be entitled to other relief for past unlawful discrimination.

Because we must vacate the judgment on the ground indicated, it becomes unnecessary for us to consider the Plaintiff's other claims of error.

The entry is:

Appeal sustained.

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

4. "Only by requiring that an employer have a strong factual basis for employment discrimination against the handicapped can the State's declared policy in the MHRA, to protect the civil rights of the physically handicapped to a fair employment opportunity, be effectively carried out." *Canadian Pacific Ltd., supra,* 458 A.2d at 1234.