380 S.E.2d 232

**Kim DAVIDSON**

v.

**SHONEY'S BIG BOY RESTAURANT, the City of Charleston Human Rights Commission, et al.**

**No. 18669.**

Supreme Court of Appeals of West Virginia.

April 21, 1989.

planning before you may find that such 'premeditated' act has taken place."

Carter Zerbe, Charleston, for Kim Davidson.

Fred F. Holroyd, Holroyd & Yost, Charleston, for Shoney's Big Boy.

No appearance for city of Charleston.

MILLER, Justice.

In this appeal, we are asked to determine if the discharge of a person having petit mal epilepsy was a violation of the City of Charleston's human rights ordinance. The Circuit Court of Kanawha County concluded that the discharge was warranted because the test was whether there was a reasonable *possibility* of injury to herself or others. We disagree as we believe the more appropriate test is whether there was a reasonable *probability* of injury to herself or others. Moreover, we believe that under the evidence, no such showing has been made under either test.

An excellent summary of the extent and nature of epilepsy was set out by the New Jersey Supreme Court in *Jansen v. Food Circus Supermarkets, Inc.*, 110 N.J. 363, 367–68, 541 A.2d 682, 684 (1988):

"An estimated 2,135,000 Americans suffer from epilepsy. Nearly half that number eliminate or 'control' epileptic seizures through medication; for another 30%, medication significantly reduces the number of seizures. *See Interviewing Guides for Specific Disabilities: The Epilepsies*, United States Department of Labor, Employment and Training Administration (1984). Despite recent advances in knowledge and treatment of epilepsy, it remains a misunderstood handicap. The term 'epilepsy'[1] itself evokes stereotypical fears that perpetuate discrimination against its victims in all aspects of life, including employment....

"Epileptics are not all alike. Some may suffer one or two seizures in a lifetime; others suffer them more frequently. The nature, timing, and frequency of seizures vary from one epileptic to another. See Interviewing Guides for Specific Disabilities: The Epilepsies,

supra. Accordingly, epileptics must be viewed not as fungible members of a class, but as individuals."

[1] Epilepsy is defined:

'A recurrent paroxysmal disorder of cerebral function characterized by sudden, brief attacks of altered consciousness, motor activity, or sensory phenomena. * * *. [Taber's Cyclopedic Medical Dictionary (15th ed.1985) at 562.]'

"Epilepsy is more properly viewed not as a disease, but as a symptom. J. Walton, *Brain's Diseases of the Nervous System* 609 (9th ed. 1985). The symptoms manifest themselves as seizures, which are the outward signs of a temporary and sudden disturbance of the electrical activity of the brain. As one leading authority states:

'It must be also accepted that virtually every individual is potentially epileptic if the provocation, whether physical or pharmacological, is sufficient * * *. It follows that there is a continuum between the epileptic and normal populations varying between the majority in whom substantial provocation is needed to produce a fit and the severe epileptics who have frequent attacks without evident cause. The margin between the two populations is clearly indistinct. [*Id.* at 610.]' "

Many of the basic facts in this case are not disputed. Kim Davidson is married and was twenty-four years of age at the time of her discharge in December, 1982. She has a high school education. Between 1978 and 1980, she worked at the Court Restaurant in Lewisburg, West Virginia, where she did a variety of tasks, i.e., cutting vegetables, tending the salad bar, and clearing and washing dishes.

In 1981, she worked as a salad bar attendant at a Bonanza restaurant in Lewisburg. In February, 1982, she was hired as a salad bar attendant at the Shoney's restaurant in Lewisburg. At Shoney's, she received on-the-job training, passed a written test, and successfully completed her ninety-day probationary period of employment. In August, 1982, she transferred to the Shoney's restaurant in Charleston, where she continued working as a salad bar attendant.

Her duties as a salad bar attendant are basically confined to setting the bar up in the morning as a breakfast bar, keeping it supplied, and changing it to a salad bar for lunch and dinner. There is no evidence that during her work as a salad bar attendant her condition ever caused her to drop, spill, or break things. Her former employer at the Court Restaurant in Lewisburg testified that her work was not affected by her condition and that she did not miss work because of it.

Mrs. Davidson was terminated on December 12, 1982, after she had a seizure early in the morning shortly before the restaurant opened. She felt the seizure coming on and was able to sit down until the seizure passed in a minute or two. There is also no substantial disagreement that she suffered from a mild form of epilepsy which involves relatively brief seizures. Even though she takes medication for her seizures, they occur on an average of four to six times a month. It appears that most of the time, Mrs. Davidson is able to tell when a seizure is imminent and, by sitting down, is able to pass through the seizure which lasts only a minute or so.

Several Shoney's employees testified that they had seen her fall during a seizure and strike her head. It does not appear that she suffered any injury. While these employees expressed concern over her condition as being a potential danger to herself or others, they gave no specific instance where harm had occurred. Several of Shoney's employees stated that Mrs. Davidson indicated the reason for some of her seizures was that she did not have sufficient funds to maintain her medication.[1] Mrs. Davidson denies that she had ever received any injury at work as a result of a seizure.

Resolution of this case, however, does not turn so much on the facts, as on the legal standard applied. The circuit court was of the view that "[t]he [Charleston] Human Rights Commission has the discretion to adopt its own standards in interpreting its own ordinance ... [and it] has chosen to apply a 'reasonable possibility of injury' standard."

**1.** After her discharge from Shoney's, Mrs. Davidson applied for social security benefits and medical aid through the State Department of Human Services. Both agencies turned her down because she had the ability to work.

This conclusion is not supported by our law. We begin with the traditional statement that municipal corporations are creatures of the State, *Alderson v. City of Huntington*, 132 W.Va. 421, 52 S.E.2d 243 (1949), and their powers are as stated in Syllabus Point 2 of *Sharon Steel Corp. v. City of Fairmont*, 175 W.Va. 479, 334 S.E.2d 616 (1985), *appeal dismissed*, 474 U.S. 1098, 106 S.Ct. 875, 88 L.Ed.2d 912 (1986):

> " ' "A municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If any reasonable doubt exists as to whether a municipal corporation has a power, the power must be denied." Syllabus Point 2, *State ex rel. Charleston v. Hutchinson*, 154 W.Va. 585, 176 S.E.2d 691 (1970).' Syllabus Point 1, *City of Fairmont v. Investors Syndicate of America, Inc.*, 172 W.Va. 431, 307 S.E.2d 467 (1983)."

Furthermore, where both the State and a municipality enact legislation on the same subject matter, it is generally held that if there are inconsistencies, the municipal ordinance must yield. Justice Caplan spoke to this point in Syllabus Point 1 of *Vector Co. v. Board of Zoning Appeals*, 155 W.Va. 362, 184 S.E.2d 301 (1971):

> "When a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect."

In *Vector Co.*, a municipal zoning ordinance required a four-fifths vote to obtain an exception to the zoning ordinance, whereas a majority vote was sufficient under the state statute. In holding that the state law prevailed, we also stated: "That municipal ordinances are inferior in status and subordinate to legislative acts is a principle so fundamental that citation of authorities is unnecessary." 155 W.Va. at 367, 184 S.E.2d at 304.

A somewhat analogous issue is found in *Cogan v. City of Wheeling*, 166 W.Va. 393, 274 S.E.2d 516 (1981), where we found that the City of Wheeling's human rights ordinance conflicted with the state statute. We recognized initially that the city's power to enact a local human rights ordinance was a result of the delegation of that authority under W.Va.Code, 5–11–12. We then stated "the general rule [is] that a municipal ordinance exercising a power granted to it by a statute must not conflict with the state statute." 166 W.Va. at 395, 274 S.E.2d at 518. (Citations omitted).

At issue in *Cogan* was a portion of the city's ordinance which the trial court construed as giving city council the power to fire the director of the local human rights commission. We pointed out that such an interpretation would be out of harmony with the state statute, W.Va.Code, 5–11–12(c), which authorizes "[t]he local commission ... to appoint such employees and staff, as it may deem necessary, to fulfill its purpose."

The basic rationale for such a rule is apparent. Where both the State and a municipality are authorized to regulate a matter, it would be illogical to permit the two entities to adopt different standards of regulation unless the statute delegating the authority to the municipality plainly and specifically authorized such a divergence.

In the present case, the finding that the possibility of an injury is sufficient to preclude employment is at odds with our construction of the state statute from which the municipality derives its authority.

In *Ranger Fuel Corp. v. West Virginia Human Rights Comm'n*, 180 W.Va. 260, 376 S.E.2d 154 (1988), we discussed the issue of the employer's burden of proving that a handicapped person constitutes a danger to herself or others by virtue of the handicap. This defense has been recognized as arising from language contained in Section 15–9(a) of the Charleston ordinance and W.Va.Code, 5–11–9(a), precluding discrimination in employment "if the individual is able and competent to perform the services required[.]"

The corollary principle is that if the handicapped person's disabilities cause

such individual to be a danger to herself or himself or others, then the individual need not be hired or can be discharged without violating the human rights law. In *Ranger Fuel*, we dealt with a job applicant who had a medical condition that could have been substantially aggravated by the working conditions and made this statement:

"In deciding whether an individual poses a serious threat to her personal safety the employer must show a reasonable probability of a materially enhanced risk of substantial harm to the applicant based on a consideration of the job requirements in light of the applicant's handicap, and the applicant's work and medical history. Hiring decisions should not be based on general assumptions or stereotypes about persons with that particular handicap. The employer has the burden of demonstrating that his decision was based on objective criteria specific to the employment decision at issue." 180 W.Va. at 266, 376 S.E.2d at 160.

■ Our rule that the "employer must show a reasonable probability of a materially enhanced risk of substantial harm" is the general rule elsewhere, as was recognized by the New Jersey Supreme Court in *Jansen v. Food Circus Supermarkets, Inc., supra.*[2] *Jansen* is of particular interest as the claimant in that case was an epileptic who worked as a meat cutter and was able to control his seizures to some extent through medication. He had not experienced a seizure at work until the incident in question. The day that he had a seizure at work he was cutting steaks with a large knife. When the seizure began, he stopped cutting and stood staring. He then noticed another employee and stated, "This is it, it's all over." He then left the room and was found in the restroom dazed and did not remember the incident.

His employer sent him home and advised him not to return without a doctor's letter of approval. This was obtained with the doctor stating that he had increased the medication and this would achieve better seizure control. A fellow employee testified that after Jansen returned to work, he stated that he thought he would lose his job and that he planned to move to Oregon. Most damaging was Jansen's statement that before he left he would "take six people with him," and that he sat there pounding his clenched fist into his hand.

Apparently, as a result of the concern voiced by fellow employees, the employer had Jansen examined by a neurosurgeon and a psychiatrist. Both physicians expressed concern over Jansen's ability to control his seizures through medication. They were of the view that his work as a meat cutter carried substantial risk of injury to himself or others. Based on these reports, the employer advised Jansen that he could not work as a meat cutter and offered him another position.[3] When he declined this offer, he was terminated.

Jansen's case was dismissed at the conclusion of the evidence with the trial court stating that he had failed to meet his burden of showing a discriminatory termination. The Appellate Division affirmed, but the Supreme Court reversed on the basis that the trial court had not determined whether additional seizures would probably result in a substantial risk of harm.[4]

**2.** *Jansen* cited these authorities in support of the reasonable probability of substantial harm rule: *Mantolete v. Bolger,* 767 F.2d 1416, 1422 (9th Cir.1985); *Kelley v. Bechtel Power Corp.,* 633 F.Supp. 927, 934 (S.D.Fla.1986); *Foods, Inc. v. Iowa Civil Rights Comm'n,* 318 N.W.2d 162, 169 (Iowa 1982); *Higgins v. Maine Cent. R.R. Co.,* 471 A.2d 288, 290 (Me.1984); *Lewis v. Remmele Eng'g, Inc.,* 314 N.W.2d 1, 4 (Minn.1981); *Chicago & N.W.R.R. v. Labor & Indus. Review Comm'n,* 98 Wis.2d 592, 297 N.W.2d 819, 826 (1980).

**3.** Jansen had secured three physicians' reports indicating that his seizures were not an undue hazard to himself or others. It is unclear whether these reports were given to the employer prior to termination.

**4.** In this regard, the New Jersey court stated: "In the absence of expert testimony linking the likelihood of a seizure to the likelihood of harm, the lower courts should not have assumed that Jansen was unable to work as a meat cutter without materially enhancing the risk of harm to himself or others." 110 N.J. at 377, 541 A.2d at 689.

In the case before us, not only was the wrong standard applied to determine the likelihood of harm, but there was a lack of any objective medical evidence that would substantiate the employer's decision to terminate Mrs. Davidson. Prior to her discharge, no attempt was made by the employer to obtain any medical information as to the particular nature of Mrs. Davidson's handicap or whether it would be probable that recurrent seizures would cause a substantial risk of injury to herself or others.

■ There appears to be a common thread running through other epileptic handicap cases: The employer, in order to justify his claim that the epileptic employee was either not hired or was discharged because the employee would be a danger to himself or others, must show that he relied on competent medical testimony. The Supreme Court of Minnesota in *Lewis v. Remmele Eng'g, Inc.*, 314 N.W.2d 1, 4 (Minn. 1981), stated:

"It is our view that, as a general rule, to satisfy the standard of a 'serious threat' to one's health or safety, the employer must establish that it relied upon competent medical advice that there exists a reasonably probable risk of serious harm. *Chicago & N.W.R.R. v. Labor & Industry*, 91 Wis.2d 462, 283 N.W.2d 603 (1979)."

*See also Higgins v. Maine Cent. Ry. Co.*, 471 A.2d 288 (Me.1984); *Kelley v. Bechtel Power Corp.*, 633 F.Supp. 927 (D.C.Fla. 1986). This determination must be made as a part of the discharge decision, as indicated in *Mantolete v. Bolger*, 767 F.2d 1416, 1422 (9th Cir.1985):

"[I]n some cases, a job requirement that screens out qualified handicapped individuals on the basis of possible future injury is necessary. However ... in order to exclude such individuals, there must be a showing of a reasonable probability of substantial harm. Such a determination cannot be based merely on an employer's subjective evaluation or, except in cases of a most apparent nature, merely on medical reports. The question is whether, in light of the individual's work history and medical history, employment of that individual would pose a reasonable probability of substantial harm. Such an evaluation necessarily requires the gathering of substantial information by the employer."

*See also Arline v. School Bd. of Nassau County*, 772 F.2d 759, 765 (11th Cir.1985), *aff'd and remanded*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); *Treadwell v. Alexander*, 707 F.2d 473 (11th Cir. 1983); *Kelley v. Bechtel Power Corp., supra.* Here there was a total lack of any competent medical evidence available to Shoney's at the time it discharged Mrs. Davidson.

■ Furthermore, as we explained in *Ranger Fuel*, the employer's judgment must be individualized "based on a consideration of the job requirement in light of the [individual's] handicap, and the [individual's] work and medical history," rather than "on general assumptions or stereotypes about persons with that particular handicap." 180 W.Va. at 266, 376 S.E.2d at 160. *E.g., School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); *Silverstein v. Sisters of Charity of Leavenworth Health Serv. Corp.*, 43 Colo.App. 446, 614 P.2d 891 (1979); *Higgins v. Maine Cent. Ry. Co., supra; Rose v. Hanna Mining Co.*, 94 Wash.2d 307, 616 P.2d 1229 (1980); *Chicago & N.W.R.R. v. Labor & Indus. Review Comm'n*, 98 Wis.2d 592, 297 N.W.2d 819 (1980). It is apparent that Shoney's made no attempt to comply with any of these requirements nor did the local human rights commission give them consideration.

For these reasons, this case is reversed and remanded to the Human Rights Commission for further consideration in light of these principles.

Reversed and Remanded.