DEBBIE MCCAMISH, APPELLANT, V. DOUGLAS COUNTY HOSPITAL, APPELLEE.
466 N.W.2d 521

Filed March 8, 1991.   No. 89-099.

Thomas F. Dowd and Terry L. Inserra, of Thomas F. Dowd & Associates, for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Thomas E. Brown for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

This is an appeal from the order of the district court which affirmed the decision of the Nebraska Equal Opportunity Commission (NEOC). NEOC found that Debbie McCamish, the plaintiff, had failed to prove that her disability (epilepsy) was unrelated to her ability to engage in her particular occupation. Thus, she failed to prove she was a member of a protected class under Neb. Rev. Stat. § 48-1102(8) (Reissue 1988). Furthermore, the NEOC held that her dismissal by the hospital was justified by a nondiscriminatory reason. We reverse, and remand the cause with directions.

On June 30, 1986, McCamish, then 18 years of age, applied for a position of employment as a food service worker at Douglas County Hospital. She was hired by the defendant, and

began her employment on August 22, 1986. Her duties included filling patients' orders when operating in one of about seven service positions. A separate position is assigned to the type of order being filled, e.g., bread, meat and potatoes, beverages, etc. McCamish places the items on trays. The trays are then placed on carts and taken to the patients. McCamish does not directly serve the patients.

McCamish was dismissed from her position on January 22, 1987, by the director of dietary services, Norma Drake. Drake indicated that McCamish's employment was terminated because McCamish failed to indicate on her preemployment health questionnaire that she had experienced any prior problems with headaches or loss of consciousness. McCamish asserts that she was dismissed simply because she had recently been diagnosed as having epilepsy.

To apply for a job with Douglas County Hospital, an applicant must fill out a health questionnaire. The questionnaire provides that if the applicant falsifies or fails to disclose health problems, the applicant, once hired, will be dismissed from the job. Among the questions asked are whether the applicant has or has had fainting or dizzy spells, balance problems, epilepsy, convulsions or seizures, frequent or severe headaches, and head injuries or loss of consciousness; whether one has consulted or been treated by clinics, physicians, chiropractors, or practitioners in the last 5 years; and whether one has been hospitalized. McCamish responded negatively to all the above questions.

Contrary to her answers on the questionnaire, McCamish had experienced prior episodes of loss of consciousness. The first such occasion occurred in June 1984. At that time McCamish spent roughly 2 to 3 hours in the hospital. The treating physician indicated that she had experienced a seizure. However, Lela Taylor, McCamish's mother, testified that neither the physician nor the hospital staff informed her that her daughter had a convulsion or seizure. The record indicates that no further medical inquiry was made at this time to determine the cause of the alleged seizure. The second period of a loss of consciousness also occurred in the summer of 1984. Again, no medical inquiry was performed to determine the

cause of the "blackouts." McCamish and her mother attributed the incidents to the stress of recently giving her newborn child up for adoption, a lack of proper diet, and fatigue.

During the next 2 years, McCamish did not experience any notable health problems. Hence, prior to filling out the health questionnaire, she did not know or believe that she had a health problem.

In her testimony, McCamish further explained that she answered negatively to ever having experienced a loss of consciousness by stating that she did not consider herself unconscious.

During the period between the time McCamish filled out the health questionnaire and her first day of employment, she experienced a third episode of loss of consciousness, while riding on the back of a motorcycle. McCamish was instructed to take 300 milligrams of Dilantin a day. Dilantin is the trademark preparation of phenytoin. Phenytoin is "[a]n anticonvulsant and cardiac depressant . . . used in the treatment of all forms of epilepsy except petit mal and as an antiarrhythmic." The Sloane-Dorland Annotated Medical-Legal Dictionary 548 (1987).

In a followup visit, McCamish was examined by Dr. Erich W. Streib, a neurologist, on August 4, 1986. Dr. Streib concluded that McCamish had a convulsive disorder and had had an epileptic seizure. A CAT scan was ordered. The scan, taken in November, revealed a large right temporal fossa arachnoidal cyst. The medical opinion was that the seizures could be controlled through medication. However, if the cyst continued to enlarge, it might become increasingly difficult to control the seizures without surgery.

Upon learning of McCamish's condition, Dr. John A. Ursick, medical director at Douglas County Hospital, recommended, on January 20, 1987, that McCamish's employment with the hospital be terminated. Although not exactly sure of McCamish's job duties, Dr. Ursick believed that since McCamish's position as a food service worker entailed the handling of hot foods and hot liquids, her medical condition might jeopardize her safety and the safety of other employees. However, in his testimony before the NEOC, Dr. Ursick

admitted that if McCamish took her medication regularly, she would be able to work without hazard to herself or to other personnel.

Dr. Streib believes that McCamish can safely perform her job duties. He gave as his opinion that if McCamish is going to have a seizure, she will be able to recognize the warning signs which will enable her to avoid kitchen accidents. Furthermore, Dr. Streib contends that the seizures can be "easily controlled" by continued medication.

On February 2, 1987, McCamish was examined by Dr. Daniel L. McKinney. Dr. McKinney agreed with Dr. Streib's assessment of McCamish's convulsion disorder. Dr. McKinney felt that if McCamish continued to take her medication, she would be able to work without hazard to herself or to other employees.

Even Drake admitted that McCamish could work as a food service worker as long as her epileptic condition was controlled. However, Drake terminated McCamish's position at the hospital.

The NEOC ruled that McCamish did not demonstrate by persuasive evidence that her handicap was unrelated to her ability to engage in a particular occupation and, further, that the hospital had a legitimate nondiscriminatory reason for termination which was not rebutted as a pretext for discrimination. The district court affirmed the NEOC's order.

McCamish assigns as error (1) the district court's finding that McCamish was not a member of a protected class because she could not perform the duties of a food service worker due to her handicap of epilepsy and (2) the district court's finding that even if McCamish was a member of a protected class, her discharge was for the nondiscriminatory reason of falsification of a preemployment questionnaire.

The standard of review to be applied by the Supreme Court when reviewing a district court's review of an order by the NEOC involving a petition filed before July 1, 1989, is de novo on the record. *Father Flanagan's Boys' Home v. Goerke*, 224 Neb. 731, 401 N.W.2d 461 (1987); *Harris v. Misty Lounge, Inc.*, 220 Neb. 678, 371 N.W.2d 688 (1985); Neb. Rev. Stat. § 84-918(2) (Cum. Supp. 1990).

The Nebraska Fair Employment Practice Act establishes the state policy on employment and how this policy should be fostered. "It is the policy of this state to foster the employment of all employable persons in the state on the basis of merit regardless of their race, color, religion, sex, disability, or national origin, and to safeguard their right to obtain and hold employment without discrimination . . . ." Neb. Rev. Stat. § 48-1101 (Reissue 1988). To carry forth this policy the Legislature has made it unlawful for an employer to "fail or refuse to hire or to discharge any individual . . . with respect to . . . employment, because of such individual's . . . disability . . . ." Neb. Rev. Stat. § 48-1104 (Reissue 1988).

Under this act, epilepsy and other seizure disorders are characterized as disabilities. However, the epilepsy or seizure disorder must be "unrelated to such person's ability to engage in a particular occupation." § 48-1102(8); *Goerke, supra.* In other words, McCamish's disability must be unrelated to her ability to engage in her particular occupation. Thus, the key inquiry in this case is whether McCamish's condition inhibits her ability to perform her job safely and efficiently. The NEOC and district court concluded that McCamish's disability was related to her ability to perform her job, and therefore, she failed to meet the first element of establishing a prima facie case.

That is to say, a complainant has the burden of proving a prima facie case of discrimination, and once the complainant has succeeded in that respect, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for rejection or discharge of the employee. Should the employer carry the burden, the employee must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Goerke, supra.*

In order to establish a prima facie case, the employee must show that she or he is a member of a protected class, that she or he is qualified for the position of employment sought, that she or he applied for and was rejected or discharged from that position, and that after she or he was rejected or discharged the job remained open. *Goerke, supra.*

In *Goerke*, the plaintiff was an epileptic, and although he

had a valid driver's license and his job included the driving of boys to various functions and locations, this court concluded that the act did not require the employer to risk the safety of the boys who were to be under his care. This court then held that since the employee's epilepsy was related to his employment duties, he "failed to prove that he is within a protected class and thus has failed to prove a prima facie case of discrimination." *Goerke, supra* at 738, 401 N.W.2d at 465.

McCamish's duties as a food service worker encompass the handling of hot liquids and hot foods. While handling the hot items, McCamish does not have contact with the patients. She simply places the food items on trays. The trays are then placed on carts to be taken to the patients. Thus, unlike the plaintiff in *Goerke*, McCamish does not pose a significant safety threat to those around her. Accordingly, she was qualified for the position of food handler in spite of her disability. See, *Jansen v. Food Circus Supermarkets, Inc.*, 110 N.J. 363, 541 A.2d 682 (1988) (termination of an epileptic employee who was a meatcutter violated New Jersey's law against discrimination); *Rose v. Hanna Mining Company*, 94 Wash. 2d 307, 616 P.2d 1229 (1980) (summary judgment of no discrimination reversed in action by job applicant alleging discrimination because of epilepsy, even though the position involved working above molten metal); *Chicago & N. W. R.R. v. Labor & Ind. Rev. Comm.*, 98 Wis. 2d 592, 297 N.W.2d 819 (1980) (discharging of epileptic employee whose duties included welding on railroad tracks and operating a motor vehicle was unlawful in light of facts that he had not suffered a seizure in 6 months and medication controlled his epilepsy); *Davidson v. Shoney's Big Boy Restaurant*, 380 S.E.2d 232 (W. Va. 1989) (termination of an epileptic restaurant employee violated the employee's rights where the employer did not base the termination on individualized evaluation of the employee's condition and work history).

McCamish has not experienced a seizure during her employment with the hospital. There was testimony that on two occasions McCamish had experienced warning signs of a possible seizure; however, no seizure occurred. Furthermore, aware of the warning signs, McCamish removed herself from

the work environment. Thus, McCamish's work history indicates that she did not pose a threat of creating a risk of substantial harm to herself or to other employees.

It is necessary for us to consider the other reason given by Douglas County Hospital for McCamish's termination, i.e., she falsified her preemployment questionnaire. Douglas County Hospital points particularly to the fact that she answered "no" to the questions, Do you have or have you had "[f]ainting/dizzy spells," "[e]pilepsy, [c]onvulsions or seizures," and "[h]ead injuries/loss of consciousness"?

There is no evidence in the record that McCamish had suffered fainting or dizzy spells. She knew nothing about her having epileptic seizures until she had been diagnosed after she had filled out the employment questionnaire. Have you ever had "[h]ead injuries/loss of consciousness" is a meaningless question. McCamish knew that she had been hospitalized for loss of consciousness, but she had not suffered a head injury. If an employer desires unequivocal answers to a questionnaire, it must ask unequivocal questions. There is no indication of any fraud or deliberate falsification on the part of McCamish.

The judgment of the district court is reversed, and the cause is remanded with directions to enter an order reversing the order of the NEOC in accordance with the mandates of this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.