Beverly **WOODYARD**, Appellant,

v.

**HOOVER GROUP, INC.**, Appellee.

No. 92–1947.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1992.

Decided Feb. 5, 1993.

---

Robert William Chapin, Jr., Lincoln, NE, argued, for appellant.

Brian W. Bulger, Chicago, IL, argued (Michael W. Duffee and Colette M. Foissotte, Chicago, IL, and Mark M. Schorr, Lincoln, NE, on the brief), for appellee.

Before FAGG, BEAM, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Beverly Woodyard was employed by Hoover Group, Inc. (Hoover) as a press operator when she suffered a work-related injury to her right leg and foot. After Hoover unsuccessfully endeavored to accommodate Woodyard's injury with several job arrangements, Hoover terminated Woodyard.

Woodyard sought relief in state court under the Nebraska Fair Employment Practice Act and the action was removed to federal court based upon the diversity of

the parties. The district court[1] granted summary judgment in favor of Hoover. We affirm.

### I.

After Woodyard injured her foot and leg, she was off work for approximately seven weeks. Upon the recommendation of the company's physician, Dr. John Porter, she returned to work where she was assigned to work in the area known as the "tool crib." Woodyard's primary task in the tool crib was to provide other employees with the supplies and materials needed to perform their jobs. After a few months of working in the tool crib, Woodyard was removed from the position because her supervisor, Kenny Johnson, observed that she was not prompt in going to the window in the tool crib to dispense supplies to the employees and that other tool crib employees often had to go to the window to assist the employees needing supplies because of Woodyard's untimely response.

Woodyard was then assigned to her former position as a press operator. Hoover assigned her to work on several different press machines over the next two months, but each time Woodyard complained that she was physically incapable of working on the machine in question. Woodyard then informed Hoover that she was unable to perform any job in the plant other than a job in the tool crib. Hoover responded by giving Woodyard the option of returning to a position in the press department or of taking a medical leave of absence. Woodyard was placed on a medical leave of absence on March 23, 1988.

On April 8, 1988, Woodyard's physician, Dr. John Yeakley, determined that Woodyard's work activity should be limited to a sedentary position until she could better tolerate standing on her feet for significant amounts of time. On April 14, 1988, Hoover's personnel specialist, Zita Scheiding, wrote a letter to Woodyard stating:

> You have been contacted on several occasions to return to work. We have indicated to you that we have work available for you. We have also asked you to come in and discuss your situation with us.
>
> You have not reported to work nor have you given us any documentation indicating that you are unable to work.
>
> The company expects you to report to work on Monday, April 18, 1988 at 7am. Failure to report to work on this date will jeopardize your job with the company.

Shortly thereafter, Dr. Yeakley sent a letter to Scheiding stating that Woodyard was unable to perform the type of work that she did before the accident, working as a press operator, but that she could work in an entirely sedentary position with her foot propped up. Hoover then modified a position to accommodate Woodyard's physical needs. Woodyard was given the task of grinding barrels while sitting down with her foot properly elevated and with other employees moving the barrels for her. Woodyard complained that she experienced pain in this position. Dr. Yeakley in another letter indicated that this type of work was not currently within her grasp.

Woodyard did not come to work on May 23, 1988, and informed Scheiding that she could no longer perform the barrel grinding job. Woodyard was placed on medical leave of absence. Under the collective bargaining agreement between Hoover and the union, which represented Woodyard, an employee is eligible to take a medical leave of absence for up to one year after which time the employee is terminated if she does not return to work. On May 23, 1989, Woodyard did not return to work and she was terminated.

### II.

The sole issue on appeal is whether the district court erred in granting Hoover's motion for summary judgment after concluding that no genuine issue of material fact exists. We review the district

---

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

court's grant of summary judgment under the same standard as applied by the district court. *Rice v. Rice*, 951 F.2d 942, 944 (8th Cir.1991) (citation omitted). The district court should be affirmed if, viewing the evidence in the light most favorable to the non-moving party, Woodyard, the full record discloses that there is no genuine issue as to any material fact and that Hoover is entitled to judgment as a matter of law. *See id.* (citing Fed.R.Civ.P. 56(c)).

The Nebraska Fair Employment Practice Act, Neb.Rev.Stat. §§ 48–1101 to 48–1126, prohibits discrimination in employment based on an individual's "disability." The definition of the term "disability" includes any physical condition caused by bodily injury "and shall also mean the physical ... condition of a person which constitutes a substantial handicap, as determined by a physician, *but does not reasonably preclude a person's ability to engage in a particular occupation*." Neb.Rev.Stat. § 48–1102(8) (1990) (emphasis added).

■ The aggrieved employee has the burden of proving a prima facie case of discrimination. *McCamish v. Douglas County Hosp.*, 237 Neb. 484, 466 N.W.2d 521, 525 (1991) (citing *Father Flanagan's Boys' Home v. Goerke*, 224 Neb. 731, 401 N.W.2d 461, 464 (1987)). The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for discharging the employee. *Id.* If the employer carries its burden, the employee must prove by a preponderance of the evidence that the reasons offered by the employer were pretextual. *Id.*

In establishing a prima facie case, Woodyard must prove that she falls within the protected class by "establish[ing] that [her] condition was unrelated to [her] ability to perform employment duties and did not adversely affect [her] carrying out the responsibilities" of her job. *Father Flanagan's Boys' Home v. Goerke*, 224 Neb. 731, 401 N.W.2d 461, 465 (1987). The district court found no genuine issue of material fact existed as to the fact that Woodyard's physical condition precluded her from performing her job. Therefore, the court held that Hoover was entitled to summary judgment in its favor as a matter of law. We agree.

Woodyard does not dispute that she is unable to perform the duties of her former position of press operator. Instead, she argues that Hoover discriminated against her by not placing her in a position in the tool crib. She does not dispute the fact that her supervisor in the tool crib was unsatisfied with her performance in the tool crib. Rather, she relies upon the opinions of her co-workers that her performance was adequate. Woodyard also relies upon the opinion of Dr. Yeakley that she could perform *most* job requirements while working in the tool crib.[2]

■ We do not agree with Woodyard's argument for several reasons. First, her argument is refuted by her own deposition in which she admitted that she would require the assistance of another employee in order to perform in the tool crib. Thus, Woodyard essentially concedes that her condition is related to and adversely affects her ability to perform employment duties, even as a tool crib employee, and therefore, she does not fall within the protected class under the Nebraska Fair Employment Practice Act. Second, Woodyard's former position was that of press operator, and her assignment to the tool crib was only temporary. Hoover's practice was to allow injured employees to do light tool crib work only during the transitory period during their recovery until they were able to return to their former positions. Permanent positions in the tool crib, however, were only filled by following the collective bargaining agreement's bidding procedure based upon seniority when a vacancy occurred. Next, Woodyard's argument and supporting evidence does not indicate that a genuine issue of material fact exists. It indicates at most that Hoover's decision to remove Woodyard from the tool crib was incorrect according to her co-workers but not that Hoover's decisions were discriminatory. Hoover made numerous attempts

---

2. This letter, however, was written two years after Woodyard's termination from Hoover and was based upon Woodyard's description of the position.

to accommodate Woodyard after her injury. Furthermore, Hoover has articulated a legitimate, nondiscriminatory reason for her ultimate discharge, the application of the terms of the collective bargaining agreement that provide for the discharge of an employee after a year of medical leave of absence if the employee does not return to work.

## III.

We find no genuine issue of material fact that precludes entry of summary judgment. Therefore, we affirm the district court's grant of summary judgment in favor of Hoover.