431 S.E.2d 353

**MORRIS MEMORIAL CONVALESCENT NURSING HOME, INC., Appellant,**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Viola Mayes, Appellees.**

No. 21456.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1993.

Decided May 21, 1993.

Lafe C. Chafin, Barrett, Chafin & Lowry, Huntington, for appellant.

Darrell V. McGraw, Jr., Mary Catherine Buchmelter, Office of the Atty. Gen., Charleston, for appellees.

McHUGH, Justice:

This action is before this Court upon an appeal from the August 17, 1992 order of the West Virginia Human Rights Commission. The Commission determined that the appellant, Morris Memorial Convalescent Nursing Home, Inc., illegally discriminated against the appellee, Viola Mayes, with regard to her employment because of a handicap. On appeal, the appellant asks that this Court reverse the ruling of the Commission and grant such relief as may be proper. For the reasons stated below, the decision of the West Virginia Human Rights Commission is affirmed.

I

At approximately twelve years of age, Viola Mayes experienced a substantial hearing loss which has resulted in her hearing impairment. However, her speech patterns and syntax were well developed, and therefore, she does not need to use sign language in order to communicate with others.

The appellant is a West Virginia corporation licensed as an intermediate care facility. Approximately 170 patients reside at the nursing home, and 72% of the patients are confined to their rooms.

The appellant hired Ms. Mayes as a dietary aide on March 2, 1988, and she began work the next day. Ms. Mayes' duties consisted of cooking, washing dishes, filling trays, preparing food and delivering snacks. The appellant asserts that Ms. Mayes' co-workers attempted to help Ms. Mayes become acclimated to her new job; yet, Ms. Mayes could never master her duties and every day she would repeatedly ask for instructions and directions. The immediate supervisors of Ms. Mayes approached the appellant's administrator and told him they did not believe Ms. Mayes was capable of adequately performing her job.

The appellees, the Commission and Ms. Mayes, claim that Ms. Mayes was unaware of anyone being unhappy with her job performance. The appellees further assert that no one ever told Ms. Mayes that she was not doing a good job. The appellant informed Ms. Mayes that she was fired by calling her sister, Ms. Stella Alford, who was also employed by the appellant, and asked Ms. Alford to tell Ms. Mayes, "we

don't need her to come back anymore." Ms. Betty Sunderland, the appellant's business manager, contacted Ms. Alford, and according to Ms. Alford, stated, "due to the communication, she's not able to do the work, she can't hear well enough." Ms. Alford then relayed the message to her sister, and on March 23, 1988, Ms. Mayes' employment with the appellant was terminated. The appellant, however, claims that Ms. Mayes' employment was terminated due to her inability to perform the duties required of a dietary aide.

Shortly thereafter, Ms. Mayes, in pursuit of employment, took the West Virginia Civil Service Examination for a food handler and scored 85.62 out of a possible score of 98. Ms. Mayes was later hired by the Veterans Home in Barboursville, West Virginia, as a food service helper performing work similar to what she had previously performed for the appellant.

## II

On May 29, 1988, Ms. Mayes filed an action with the West Virginia Human Rights Commission, against the appellant, claiming that she had been illegally discriminated against with regard to her employment because of her hearing impairment. On June 6, 1990, a hearing was held in Huntington, West Virginia.

The Commission entered a final order in this case on August 17, 1992, which in essence affirmed the hearing examiner's final decision. The Commission found that the appellant had illegally discriminated against Ms. Mayes. Furthermore, in the order, the Commission concluded that Ms. Mayes, pursuant to *W. Va. Code*, 5–11–3(t) [1989],[1] is a handicapped person with a physical impairment, and, with reasonable accommodation, she possesses the skill to do the job for which she was hired. The Commission further concluded that the appellant's explanation for terminating Ms. Mayes was pretextual and in violation of the West Virginia Human Rights Act. As a result of the Commission's finding of discrimination, Ms. Mayes was awarded:

(1) $6,331.50 in back pay, plus pre-judgment interest thereon at the rate of 10% per annum, and (2) incidental damages in the sum of $2,950.00 for embarrassment, emotional distress, humiliation and loss of personal dignity.

It is from the order of August 17, 1992 that the appellant appeals to this Court.

## III

■ We note initially that the "West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties." Syl. pt. 1, *West Virginia Human Rights Commission v. United Transportation Union, Local No. 655*, 167 W.Va. 282, 280 S.E.2d 653 (1981). *See Frank's Shoe Store v. West Virginia Human Rights Commission*, 179 W.Va. 53, 365 S.E.2d 251 (1986).

This Court has defined substantial evidence as

such relevant evidence, on the whole record, as a reasonable mind might accept as adequate to support a finding; it must be enough to justify a refusal to direct a verdict, if the factual matter were tried to a jury. 'This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' The reviewing court is not entitled to reverse the finding of the trier of the facts simply because the reviewing court is convinced that it would have weighed the evidence differently if it had been the trier of the facts.

*Brammer v. West Virginia Human Rights Commission*, 183 W.Va. 108, 111, 394 S.E.2d 340, 343 (1990) (internal citations omitted), *quoting West Virginia Institute of Technology v. West Virginia Human Rights Commission*, 181 W.Va. 525, 532–33, 383 S.E.2d 490, 497–98 (1989). Applying this scope of review in the instant

---

1. *W.Va.Code*, 5–11–3(t) [1989] was amended in 1992, and is now *W.Va.Code*, 5–11–3(m) [1992].

However, this amendment does not affect the outcome in this case.

case, we believe the finding of discrimination is supported by substantial evidence on the whole record.

The ultimate issue on appeal is whether the Commission's finding that the appellant illegally discriminated against Ms. Mayes was erroneous. The appellant contends that the findings of the Commission are clearly wrong and are unsupported by substantial evidence. It is also necessary, however, to establish the principles to be applied in a case of discriminatory discharge because of a handicap.

■ First, we begin our analysis by recognizing that there are two theories of employment discrimination, the disparate impact theory and the disparate treatment theory. The first theory focuses on the discriminatory effect of the employer's acts, the second on the discriminatory motive of the employer. *See Alexander v. Frank*, 777 F.Supp. 516 (N.D.Tex.1991). More specifically, "[t]he disparate impact theory is invoked to attack facially neutral policies which, although applied evenly, impact more heavily on a protected group." *Racine United School District v. Labor and Industry Review Commission*, 164 Wis.2d 567, 476 N.W.2d 707, 718 (1991), *citing Griggs v. Duke Power Co.*, 401 U.S. 424, 430–32, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158, 163–65 (1971). "Under the disparate treatment theory, the complainant must show that the employer treats some people less favorably than others because they belong to a protected class." *Racine United School District, supra* at 718, *citing International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36, 97 S.Ct. 1843, 1854–55, 52 L.Ed.2d 396, 415–16 (1977). "Thus, a complainant asserting a disparate treatment theory must prove discriminatory intent to prevail, while a complainant asserting a disparate impact theory need not offer any such proof." *Id.*

■ In the instant case, the appellant denies terminating Ms. Mayes' employment because of her handicap. Rather, the appellant claims that the termination of Ms. Mayes' employment was based upon her inability to perform the skills required of a dietary aide. Therefore, the disparate treatment theory is applicable in that the issue of the employer's motivation, behind its decision to terminate Ms. Mayes' employment, must be resolved.

■ The standard announced in the United States Supreme Court case of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applicable where the complainant must prove the intent and motivation to discriminate. *See Quaker Hill Place v. Saville*, 523 A.2d 947 (Del.Super.Ct.1987). The *McDonnell Douglas* case involved a discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Title VII was designed to cover discrimination because of race, sex, religion and national origin. In these types of situations, discrimination is not admitted, and there is no direct evidence of discriminatory intent. *McDonnell Douglas*, as more recently refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207, 215 (1981), held that the order and allocation of the burdens of production and persuasion, and the prima facie test to be applied in a discrimination case is as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
>
> ....
>
> The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a [preponderance] of the evidence that she applied for an available position for which she was qualified, but was rejected

under circumstances which give rise to an inference of an unlawful discrimination.

(citations omitted) (footnote omitted). The above noted formula, in establishing a prima facie case of discrimination, is not an absolute, however, and has been altered to fit the facts of a particular case. *See Kut–Kwick Corporation v. Johnson*, 189 Ga. App. 500, 376 S.E.2d 399 (1988).

This case is one of first impression for this Court in that we have never set forth the requirements needed to establish a case of discriminatory discharge for a handicapped person.

 In order to establish a case of discriminatory discharge under *W.Va.Code*, 5–11–9 [1989], with regard to employment because of a handicap, the complainant must prove as a prima facie case that (1) he or she meets the definition of "handicapped," (2) he or she is a "qualified handicapped person," and (3) he or she was discharged from his or her job. The burden then shifts to the employer to rebut the complainant's prima facie case by presenting a legitimate nondiscriminatory reason for such person's discharge. If the employer meets this burden, the complainant must prove by a preponderance of the evidence that the employer's proffered reason was not a legitimate reason but a pretext for the discharge.

The West Virginia Human Rights Act, *W.Va.Code*, 5–11–1, *et seq.* governs the employment rights of handicapped individuals. Pursuant to *W.Va.Code*, 5–11–9(a) [1989], of the West Virginia Human Rights Act: "It shall be an unlawful discriminatory practice, ... (1) For any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or handicapped[.]" [2] With this

basic principle in mind, the complainant must satisfy her burden of establishing a prima facie case.

In regard to the first criterion, the parties in the case before us stipulated to the fact that Ms. Mayes is "handicapped," [3] and with respect to the third criterion, it is evident from the transcript that Ms. Mayes was terminated from her position. It is the second criterion which remains in dispute.

The United States Supreme Court has recognized the right of the handicapped employee to receive reasonable accommodation. In *Southeastern Community College v. Davis*, 442 U.S. 397, 412–13, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980, 992 (1979), the Supreme Court held, "situations may arise where a refusal to modify an existing program might become unreasonable and discriminatory. Identification of those instances where a refusal to accommodate the needs of a disabled person amounts to discrimination against the handicapped continues to be an important responsibility of HEW [Health, Education and Welfare]."

Moreover, the Supreme Court, pursuant to section 504 of the Rehabilitation Act, defined the term "otherwise qualified" and discussed the importance of considering reasonable accommodations in determining whether a handicapped individual is otherwise qualified for the job in *School Board of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307, 321 n. 17 (1987):

'An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap.' *Southeastern Community College v. Davis*, 442 U.S. 397, 406 [99 S.Ct. 2361, 2367, 60 L.Ed.2d 980] (1979). In the employment context, an otherwise qualified person is one who can perform 'the essential functions' of the job in question. 45 CFR § 84.3(k) (1985). When a handi-

---

2. *W.Va.Code*, 5–11–9 [1989] was amended in 1992. However, this amendment does not affect the outcome in this case.

3. *W.Va.Code*, 5–11–3(t) [1989] provides, in part:

The term 'handicap' means a person who:

(1) Has a mental or physical impairment which substantially limits one or more of such person's major life activities; the term 'major life activities' includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working[.]

capped person is not able to perform the essential functions of the job, the court must also consider whether any 'reasonable accommodation' by the employer would enable the handicapped person to perform those functions. *Ibid.* Accommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee, *Southeastern Community College v. Davis*, 442 U.S., at 412 [99 S.Ct. at 2370], or requires 'a fundamental alteration in the nature of [the] program,' *id.*, at 410 [99 S.Ct. at 2369].

Thus, the handicapped individual is "otherwise qualified" if he or she is able to perform the job after the employer has made reasonable accommodations.[4]

■ "A 'qualified handicapped person' under the West Virginia Human Rights Act and the accompanying regulations is one who is able and competent, *with reasonable accommodation*, to perform the essential functions of the job in question." Syl. pt. 1, *Coffman v. West Virginia Board of Regents*, 182 W.Va. 73, 386 S.E.2d 1 (1988). *See also* 77 *West Virginia Code of State Rules*, § 77–1–4.4.2 (1991).[5]

Reasonable accommodation is defined as follows in 77 *W.Va. C.S.R.* §§ 77–1–4.4 through 77–1–4.54 (1991):

4.4. 'Reasonable Accommodation' means reasonable modifications or adjustments to be determined on a case-by-case basis which are designed as at-

tempts to enable a handicapped employee to be hired or to remain in the position for which he was hired. Reasonable accommodation requires that an employer make reasonable modifications or adjustments designed as attempts to enable a handicapped employee to remain in the position for which she/he was hired.

4.5. An employer shall make reasonable accommodation to the known physical or mental impairments of qualified handicapped applicants or employees where necessary to enable a qualified handicapped person to perform the essential functions of the job. Reasonable accommodations include, but are not limited to:

. . . .

4.5.4. The preparation of fellow workers for the handicapped employee, to obtain their understanding of the handicapping limitations and their cooperation in accepting other reasonable accommodations for the handicapped employee.

The West Virginia Human Rights Commission promulgated the foregoing regulations to assist in the interpretation and implementation of the West Virginia Human Rights Act. Hence, it is clear, from all the above, that a duty is imposed upon the employer to reasonably accommodate the handicapped employee.

■ In support of Ms. Mayes' contention that she was qualified to do the job, numer-

---

**4.** In *Coffman v. West Virginia Board of Regents,* 182 W.Va. 73, 386 S.E.2d 1 (1988), Justice Miller's dissenting opinion focused on the majority's "mistreatment of the facts" of the case. However, Justice Miller, in an excellent discussion, recognized the precedent set forth by the United States Supreme Court in two of its cases concerning handicap discrimination in the workplace and the right of the handicapped individual, to be reasonably accommodated by his or her employer. *See Southeastern Community College, supra* and *School Board of Nassau County, supra.*

**5.** Approximately six months after the decision was rendered in *Coffman, supra,* this Court rendered a decision in the case styled *Ranger Fuel Corporation v. West Virginia Human Rights Commission,* 180 W.Va. 260, 376 S.E.2d 154 (1988). In that case, the elements required to establish a prima facie case of handicap dis-

crimination were outlined. The second criterion of the three-part test required the complainant to prove that he or she "possesses the skills to do the desired job with reasonable accommodations[.]" *Id.* at syl. pt. 2. This criterion is basically the same as the second criterion set forth in this text. As noted above, the definition of a qualified handicapped person was adopted from this Court's opinion in *Coffman.* The *Coffman* case was not cited within the *Ranger Fuel* opinion. With regard to the criterion discussed in *Ranger Fuel,* this Court's conclusion was based upon an analysis of the West Virginia statutes and state and federal regulations without resorting to the wording of such statutes and regulations. In *Coffman,* however, the Court's interpretation of a "qualified handicapped person" is taken directly from the wording of the state statutes and regulations. The result is the same, but the reasoning was different.

ous witnesses testified on her behalf. Ms. Ethel Dalton, who worked with Ms. Mayes at the appellant's facility and subsequently at the Veterans Home in Barboursville, testified that Ms. Mayes was performing her work at Morris Memorial as well as could be expected. Ms. Dalton further testified that Ms. Mayes was an equally good worker at the Veterans Home, and the duties she performed at the Veterans Home were comparable to those she performed at Morris Memorial. Ms. Louis Thabitt, Ms. Mayes' supervisor at the Veterans Home, testified that Ms. Mayes is an excellent worker, and she follows instructions well. In addition, Ms. Helen Drown, the section chief in the dietary section and the storeroom areas at the Veterans Home, also testified about Ms. Mayes' ability to perform her duties. Ms. Mayes was characterized as an excellent employee by Ms. Drown. Ms. Drown further testified that when Ms. Mayes completes her duties, she is always willing to assist her co-workers with their duties.[6]

The appellant contends that Ms. Mayes was afforded every reasonable accommodation at its facility, and yet, she was unable to perform the duties of a dietary aide.

The appellant asserts that when Ms. Mayes could not understand or hear, her supervisors and co-workers would continue to try and communicate with her until they believed she understood. Furthermore, the appellant claims that a numbering system was implemented to assist Ms. Mayes, and when that did not work, she was given written instructions, which she failed to follow. The Commission, however, found that those systems were not implemented solely for Ms. Mayes' benefit, rather the systems were a part of the appellant's normal course of business.

In response, the appellees contend that Ms. Mayes was unaware that the appellant was unhappy with her and her job performance. It is evident from the transcript

that no one ever spoke with Ms. Mayes about wearing a hearing aid, nor did anyone ask her if there was anything that could be done to enable her to hear more clearly. Moreover, it is questionable as to whether Ms. Mayes' other supervisor, Sachiko Cunningham, knew of her hearing impairment. The appellees conclude by contending that Ms. Mayes was denied the very simple accommodation for her physical impairment. Specifically, when communicating, she needs a person to look at her when speaking and to speak loudly to her.

It is further evident from the transcript that Viola Mayes was terminated from her job due to her hearing impairment. For instance, Ms. Betty Sunderland pointedly told Ms. Mayes' sister, Ms. Alford, that Ms. Mayes was unable to adequately perform her job due to her communication problem, and therefore, her services were no longer needed.

Accordingly, we are of the opinion that the appellee established a prima facie case of discriminatory discharge, and the appellant failed to provide convincing evidence to justify its assertion that Ms. Mayes' employment was terminated because of her poor job performance as a dietary aide. It is clear from the evidence adduced at trial that Ms. Mayes possessed the requisite skill to perform the duties of a dietary aide. It is obvious that the appellant knew, or at least was on notice, of Viola Mayes' hearing impairment, because it was listed on her job application and the employee health examination record. We agree with the Commission's finding that the appellant, knowing of Ms. Mayes' impairment and the fact that the appellant had a problem with her job performance, had an obligation to inquire as to whether and what accommodations could be made to enable her to adequately perform her job. Furthermore, Ms. Mayes only worked for the appellant for approximately three weeks, a fraction of the appellant's standard ninety-day pro-

6. Ms. Mayes had been employed at the Barboursville Veterans Home for almost fifteen

months at the time of her hearing.

bationary period. We, therefore, believe the West Virginia Human Rights Commission's ruling was supported by substantial evidence, and thus, we uphold its decision that the appellant, when terminating her employment, illegally discriminated against Viola Mayes.

For the foregoing reasons, the judgment of the West Virginia Human Rights Commission is affirmed.

Affirmed.