# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Erica Dickerson,**
**Plaintiff Below, Petitioner**

**vs.)  No. 19-0203** (Kanawha County 15-C-1962)

**West Virginia State Treasurer's Office;**
**John Perdue, in his individual capacity**
**and as State Treasurer; and Carolyn**
**Atkinson, in her individual capacity and**
**as a Deputy Treasurer of unclaimed property,**
**Defendants Below, Respondents**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Erica Dickerson, by counsel Hoyt Glazer, appeals the Circuit Court of Kanawha County's February 19, 2019, order awarding summary judgment to respondents. Respondents West Virginia State Treasurer's Office ("WVSTO"); John Perdue, in his individual capacity and as State Treasurer ("Treasurer Perdue"); and Carolyn Atkinson, in her individual capacity and as a Deputy Treasurer of unclaimed property, by counsel Charles R. Bailey and David J. Mincer, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 1, 2008, petitioner was hired as an assistant claims manager in the WVSTO's unclaimed property division. While employed at the WVSTO, Joann Tinsley served as petitioner's immediate supervisor. At all times relevant hereto, Respondent Carolyn Atkinson was the deputy treasurer of unclaimed property and, in such role, also exercised supervisory authority over petitioner. The parties concur the WVSTO had an unwritten policy whereby "it was 'suggested/requested' that the [WVSTO] staff maintain a balance of 40 hours of annual leave" and that petitioner had knowledge of said policy.[1]

---

[1]The WVSTO had no such policies with regard to sick leave.

1

Petitioner contends that beginning in or around late 2010, she began to "periodically use paid sick time related to stomach problems." An internal employee performance appraisal was completed for petitioner on November 22, 2010. In this appraisal, it was noted that petitioner "needs to continue to work on building her leave to the 40 hours of annual." Petitioner's employee performance was again evaluated in October of 2011. In that appraisal, it was noted that petitioner "[d]oes not always follow through with work assignments [and] . . . [n]eeds to establish [that] she is dependable by being present consistently and accruing leave rather than taking it as soon as earned." Further, it was noted that petitioner "needs to focus on being present at the office predictably and consistently in order to gain the respect of her subordinates." As to the particular appraisal of petitioner's "work environment," it was noted that petitioner "should work on leading by example by being present for work on time each day and limit any complaints or concerns to her supervisors not her subordinates."

In a July 26, 2012, e-mail to Assistant Treasurer Danny Ellis ("Mr. Ellis"), Respondent Atkinson advised that petitioner "took considerably more of each [annual and sick leave] than she earned." Respondent Atkinson informed Mr. Ellis that "[w]e have discussed [this issue] with [petitioner] repeatedly but nothing has changed – except that every time we discuss she takes off again." Respondent Atkinson further noted that petitioner was not a team player, in that because of her role as an assistant claims manager role, her absences from work were noticed and commented on frequently by front-line staff.

On December 31, 2012, petitioner contends that she became ill and ultimately sought treatment at the emergency room for vomiting, abdominal pain, and diarrhea. As a result of this illness, petitioner missed work on January 2 through January 4, 2013. Upon her return to work on January 7, 2013, petitioner provided her employer with two medical excuses, one from the emergency room and one from her family doctor. While the medical excuse from the emergency room excused petitioner from work on January 1, 2013 through January 7, 2013, the medical excuse from her family doctor indicated that petitioner could return to work on January 4, 2013. Neither of the medical excuses "provided the reasons for petitioner's treatment and did not indicate if treatment would be continuing."

Petitioner returned to work on January 7, 2013, and worked a full day, but took two hours of leave on January 8, 2013, in order to pick up medication. Petitioner took another one hour and forty-five minutes of leave on January 9, 2013, because she was ill, and an additional one and one-half hours on January 11, 2013, as "she was still sick." On January 18, 2013, petitioner's employment with the WVSTO was terminated. That day, petitioner received a termination letter which noted that her employment with the WVSTO was "being terminated without cause, as [petitioner] was an at-will employee not covered by civil service or by the West Virginia Division of Personnel."

Respondents contend that petitioner's termination was "in the works" as early as July of 2012, nearly six months prior to her termination and was completely unrelated to petitioner's illness in January of 2013. Specifically, respondents argue that petitioner's employment was terminated because petitioner "was not a team player," "did not do what she was supposed to as an employee, and for the failings and short comings (sic) identified in her employment

2

evaluations." In a December 12, 2012, e-mail to Mr. Ellis, Respondent Atkinson inquired as to how soon she could move forward with the termination of petitioner's employment, to which Mr. Ellis responded. "[w]e'll try to do it ASAP."

Several months prior to January of 2013, Mr. Ellis discussed the termination of petitioner's employment with Treasurer Perdue. Initially, Treasurer Perdue "declined to terminate [petitioner's employment] and instructed [Mr. Ellis] to continue" to monitor the situation. In December of 2012 or early January of 2013, Treasurer Perdue recalled that he was advised by Mr. Ellis that the situation with respect to petitioner's employment and work absences "wasn't getting any better and was continuing after [petitioner] was talked to and was informed about using her sick and annual leave." Treasurer Perdue was troubled by this pattern exhibited by petitioner and advised that when petitioner's actions were again brought to his attention, the WVSTO decided to "take action."

On November 2, 2015, petitioner filed the underlying amended complaint against respondents. In her amended complaint, petitioner alleged that respondents "illegally terminated her employment" and asserted claims for violation of the Family and Medical Leave Act of 1993 ("FMLA"), disability discrimination under the West Virginia Human Rights Act ("WVHRA"),[2] negligent infliction of emotional distress, the tort of outrage, and retaliation under *Harless v. First National Bank*, 162 W. Va. 116, 246 S.E.2d 270 (1978). Specifically, petitioner alleged that her employment was terminated because she received treatment for an H. Pylori infection[3] on January 8, 2013, and was eligible for FMLA leave. Further, petitioner argued that her H. Pylori diagnosis constituted a disability under the WVHRA and that she was discriminated against on the basis of that disability.

Petitioner's claims for negligent infliction of emotional distress, monetary recovery under the FMLA, and retaliation under *Harless* were dismissed by the circuit court's order dated September 2, 2016. Petitioner did not appeal the circuit court's ruling in this regard. Later, petitioner voluntarily dismissed her tort of outrage claim. Thus, the only claims then left for consideration by the circuit court were petitioner's claims for disability discrimination under the WVHRA and nonmonetary damages under the FMLA.

Following discovery, respondents filed their motion for summary judgment as to petitioner's remaining claims. The circuit court held a hearing on respondents' motion on January 4, 2019. By order dated February 19, 2019, the circuit court awarded summary judgment to respondents.

Specifically, the circuit court found that respondents were entitled to summary judgment as to petitioner's disability discrimination claims because petitioner could not establish "that she

---

[2]West Virginia Code §§ 5-11-1 through -21.

[3]Helicobacter Pytlori (H. Pylori) is a type of bacteria that can live in a person's digestive tract and cause sores, ulcers, and otherwise damage the lining of the stomach or upper part of small intestine.

had a physical or mental impairment that substantially limited one or more major life activity to constitute a disability as defined by [West Virginia Code] § 5-11-3(m) (1),(2) and (3)).” Further, the court found that there was no evidence to support petitioner's premise that she had a disability "on account of H. Pylori because ultimately [it was determined that she] did not have H. Pylori." While petitioner argues that her "stomach issues," which caused her to miss a few days of work in January of 2013, meets the "WVHRA's definition of disability," this argument contradicts petitioner's own testimony that "she was able to perform the functions of the job at the WVSTO in January of 2013."

The circuit court referenced statements made by petitioner during her deposition relating to her job interview with the West Virginia Department of Health and Human Resources in 2014, at which, petitioner "told interview[ers] about her history of nausea and vomiting." When asked if she told these interviewers whether she believed her history of nausea and vomiting would affect her ability to perform her job, petitioner testified that she "did not believe that any of those issues would affect my abilities to perform my duties as they had not affected my abilities to perform my job in any other previous employment I had obtain[ed] or held . . . [i]ncluding the [WVSTO]."

Based upon such evidence, the circuit court determined that a reasonable fact finder could not find that petitioner suffered from a disability in January of 2013. The circuit court determined that petitioner did not proffer sufficient evidence to show that respondents perceived her as being disabled. Both Ms. Tinsley and Respondent Atkinson testified that in January of 2013, they did not perceive petitioner as having a disability. Accordingly, the court found that respondents set forth a legitimate, nondiscriminatory reason for the termination of petitioner's employment that pre-dated her illness in January of 2013, and that petitioner's claims otherwise were insufficient to withstand summary judgment.

It is from the court's February 19, 2019, order that petitioner now appeals. Petitioner takes no issue with regard to the circuit court's award of summary judgment to respondents as to her claims for nonmonetary relief under the FMLA and only appeals the court's award of summary judgment to respondents as to petitioner's claims for disability discrimination under the WVHRA.

On appeal petitioner asserts three assignments of error. First, petitioner argues that the circuit court erred in failing to properly apply the legal standard for deciding a motion for summary judgment. Second, petitioner argues that the circuit court erred in finding that petitioner was not a person with a disability under the WVHRA. Third, petitioner suggests that the circuit court erred in using petitioner's status as an at-will employee to prohibit consideration of evidence as to respondents' motives in terminating petitioner's employment. As petitioner's first two assignments of error are interrelated, we address them together.

We have long held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). We have further found that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Surety Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). Also, we have held that

[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. Pt. 4, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

West Virginia Code § 5-11-9(1), provides, in pertinent part, that it shall be an unlawful discriminatory practice "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or disabled[.]"

An employer "discriminate[s]" when it "exclude[s] from, or fail[s] or refuse[s] to extend to, a person equal opportunities because of . . . [a] disability." West Virginia Code § 5-11-3(h). Disability is defined in West Virginia Code § 5-11-3(m) as (1) "[a] mental or physical impairment which substantially limits one or more of such person's major life activities. The term 'major life activities' includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working"; (2) "[a] record of such impairment"; or (3) "[b]eing regarded as having such impairment."

This Court has recently examined the elements necessary to establish a case of discriminatory discharge under West Virginia Code § 5-11-9, and held that

"[i]n order to establish a case of discriminatory discharge under W.Va. Code, 5-11-9 [1989], with regard to employment because of a [disability], the complainant must prove as a prima facie case that (1) he or she meets the definition of [having a 'disability'], (2) he or she is a '[qualified individual with a disability],' and (3) he or she was discharged from his or her job. The burden then shifts to the employer to rebut the complainant's prima facie case by presenting a legitimate nondiscriminatory reason for such person's discharge. If the employer meets this burden, the complainant must prove by a preponderance of the evidence that the employer's proffered reason was not a legitimate reason but a pretext for the discharge." Syl. Pt. 2, *Morris Mem'l Convalescent Nursing Home, Inc. v. W.Va. Human Rights Comm'n*, 189 W.Va. 314, 431 S.E.2d 353 (1993).

Syl. Pt. 5, *Woods v. Jefferds Corp.*, 241 W. Va. 312, 824 S.E.2d 539 (2019).

Based upon our review of the record and our holding in *Jefferds*, we find that the circuit court applied the correct standard in deciding respondent's summary judgment motion as to petitioner's claims for disability discrimination under the WVHRA. Here, there is no dispute based upon the admissions of petitioner during her deposition, that she did not suffer from a disability related to her stomach issues. Rather, petitioner acknowledged her long-standing history of stomach issues, but stated that the same did not affect her ability to perform her job duties, including her work at the WVSTO. Further, there is no evidence that respondents perceived petitioner as disabled. In fact, Respondent Atkinson testified that she did not perceive petitioner to be disabled and that petitioner did not present with any disability. Moreover, when returning to

5

work in early January of 2013, petitioner submitted not one, but two, medical excuses releasing her to return to work on January 7, 2013, and providing no indication that she "would need ongoing treatment or would be required to miss work in the future." Accordingly, we find no error in the circuit court's award of summary judgment to respondents as to petitioner's claims for disability discrimination under the WVHRA.

In her final assignment of error, petitioner suggests that the circuit court erred in using petitioner's status as an at-will employee to prohibit consideration of evidence as to respondents' motives in terminating petitioner's employment. We have held that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 10, *State v. Huffman*, 141 W. Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994). Here, petitioner does not point to any specific evidence that was excluded by the circuit court in consideration of respondents' motion to dismiss, aside from the bald assertion that the court gave little credence to petitioner's unsubstantiated speculative allegations.

As to summary judgment, this Court has reasoned that although the "nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the [ ] evidence," the nonmoving party cannot create a genuine issue of material fact through "mere speculation or the building of one inference upon another." *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 61 n.14, 459 S.E.2d 329, 338 n.14 (1995) (citations omitted). Here, the only support for petitioner's assertion that she suffered from a disability, or a perceived disability, leading to the termination of her employment is based solely upon speculation and conjecture. As stated above, petitioner has acknowledged that she had no disability which substantially limited her ability to work and Respondent Atkinson expressly stated that she did not perceive petitioner as disabled. Accordingly, we find no error.

For the foregoing reasons, we affirm the Circuit Court of Kanawha County's February 19, 2019, order awarding summary judgment to respondents.

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison